IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ROBERT L. HUDSON,

    Plaintiff,

v.                                                                               No. 2:16-cv-02945-JPM-tmp

SHELBY COUNTY GOVERNMENT,
TENNESSEE, SHELBY COUNTY DIVISION
OF CORRECTIONS, WILLIAM J. GUPTON,
JR., in his official capacity and Individual
capacity, and ANTHONY GUNN, in his
official capacity and individual capacity,

    Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

Before the Court is Defendants Shelby County Government, Tennessee; Shelby County Division of Corrections; William J. Gupton, Jr.; and Anthony Gunn ("Defendants")'s Motion for Summary Judgment, filed on January 22, 2018. (ECF No. 51.) The Court has considered the motion, as well as Plaintiff Robert Hudson's response, filed February 18, 2018 (ECF No. 60) and Defendants' reply, filed on March 1, 2018 (ECF No. 61). For the reasons stated below, Defendants' motion for summary judgment is DENIED as to Hudson's claim under the Americans with Disabilities Act, and GRANTED as to Hudson's Due Process Clause claim.

**I.    Background**

    **a.  Factual History**

Plaintiff Robert L. Hudson seeks damages for violations of his rights under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12201 *et seq.*, and violations of 42

U.S.C. § 1983 under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. (ECF No. 28).

On January 2, 2001, Defendant Shelby County Division of Corrections ("SCDOC"), a public employer and division of Defendant Shelby County, Tennessee, hired Hudson as a corrections officer. (Id. ¶¶ 2-3, 8.) As a corrections officer, "Plaintiff was responsible for, among other things, maintaining security and order in the Division of Corrections, observing and reporting conduct of inmates, operation of security floors, supervising the movement and transportation of inmates, maintaining control of areas within the prison, and controlling, restraining and maintaining disciplinary control over the inmates." (Id. ¶ 8.)

In August 2010, Hudson underwent surgery to his right eye to correct uncontrolled intraocular pressures, and subsequently lost all vision in his right eye. (Id. ¶ 11.) Following the surgery, Hudson requested and was given FMLA protection for leave. (Id. ¶ 12.) Sometime in September 2010, he returned to work as a corrections officer without restrictions. (Id. ¶ 13.) Hudson underwent a second surgery to his right eye on April 13, 2011, and returned to work three days later on April 16, 2011, without restrictions. (Id. ¶¶ 15-16.)

"On December 10, 2014, Plaintiff went out on medical leave to have surgery on his right foot to correct damage he suffered as a result of a blood clot forming in his right leg." (Id. ¶ 18.) Following the surgery, Hudson exhausted his available leave days as well as his leave under the FMLA, and "went on Long-Term Disability on or around June 24, 2015." (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts, ECF No. 60-2, ¶¶ 1-2 (citing Hudson Dep., ECF No. 57 at 45:21-46:11).) On November 10, 2015, Hudson's medical provider cleared him to return to work without restrictions. (ECF No. 28, ¶ 19.) Hudson notified SCDOC and requested to return

on December 1, 2015. (Id. ¶ 19.) On November 30, 2015, SCDOC informed Hudson he would need to take a drug test on December 1, 2015; he complied. (Id. ¶ 20.)

SCDOC then informed Hudson he would need to undergo a physical fitness examination; Plaintiff complied on December 8, 2015, by seeing a professional selected by SCDOC. (Id. ¶¶ 21-22.) The results of that exam were faxed to Defendants on December 10, 2015. (Id. ¶ 23.)

On or about December 29, 2015, Hudson obtained a copy of the exam results. (Id. ¶ 26.) On the form sent to SCDOC, the doctor checked a box indicating that Hudson was "unable to perform all essential functions as listed;" the form requested that the doctor "[p]lease list failed essential function(s);" the doctor wrote at the bottom of the form: "1) CRF – on dialysis 2) No vision in right eye." (Id.)

Around this time, Defendant Anthony Gunn, the Human Resources Manager of the SCDOC who had supervisory authority over Hudson while Hudson worked at SCDOC (id. ¶ 5), allegedly informed Hudson that "[t]hey are not going to let you [Hudson] come back to work" at SCDOC; the "they" of his comment was left unclear. (Id. ¶ 27.)[1]

On or about May 23, 2016, Gunn offered Hudson a position as a maintenance utility worker with the SCDOC. (Id. ¶ 31.) Hudson contends "Defendants offered Plaintiff no appeal rights through the Civil Service Merit Board, nor was Plaintiff given notice of, or an opportunity to be heard on, the reasons for his termination." (Id. ¶ 32.)

### b. Procedural History

Hudson brought this action on December 1, 2016. (ECF No. 1.) He alleged that Defendants' actions constituted unlawful disability discrimination in violation of the Equal

---

[1] Hudson also brings suit against Defendant William J. Gupton. Jr., the director of the SCDOC who had supervisory authority over Hudson while Hudson worked at SCDOC (id. ¶ 4), alleging that Gupton had the final authority and was empowered to make employment decisions within the Division of Corrections.

Protection Clause of the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983. On March 6, 2017, Hudson filed an Amended Complaint. (ECF No. 28.) The Amended Complaint included Plaintiff's right to sue letter from the EEOC and alleged claims pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. § 12201, *et seq*. ("ADA"), and 42 U.S.C. § 1983 under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. (Id.) Hudson seeks back pay, lost benefits, reinstatement or front pay if reinstatement is not feasible, compensatory damages, punitive damages, costs and expenses, pre- and post-judgment interest, and fees. (Id. at 88-89.[2]) Defendants filed an answer on April 3, 2017. (ECF No. 35.)

On April 18, 2017, Defendants filed a Motion for Partial Judgment on the Pleadings. (ECF No. 36.) Defendants moved the Court to dismiss Hudson's claims under the ADA against William Gupton and Anthony Gunn, individually, and under the Equal Protection Clause pursuant to Federal Rule of Civil Procedure 12(c) for failure to state a claim upon which relief could be granted. (ECF No. 36-1 at 141-42.) At the Scheduling Conference on April 21, 2017, counsel for both parties agreed that the individual ADA claims against Defendants Gupton and Gunn should be dismissed. The Scheduling Order reflects that dismissal. (ECF No. 39 at 152.) On August 1, 2017, the Court granted the remainder of Defendants' motion to dismiss, and dismissed Hudson's claims for violation of the Equal Protection Clause. (ECF No. 42.)

Defendants filed the instant motion on January 22, 2018. (ECF No. 51.) Hudson filed his response on February 18, 2018, and Defendants filed their reply on March 1, 2018. (ECF Nos. 60, 61.)

---

[2] Unless otherwise noted, page numbers refer to the CM/ECF PageID index.

On March 21, 2018, the Court held a status conference to re-set the trial date to May 21, 2018. (ECF Nos. 63, 64.) On April 16, 2018, Hudson filed a motion to continue the trial because of his own unavailability. (ECF No. 66.) Magistrate Judge Pham granted the motion on April 17, 2018 (ECF No. 67), acting pursuant to Administrative Order 2018-13.

**II.     Legal Standards**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC, 758 F.3d 777, 781 (6th Cir. 2014) (per curiam). "A genuine dispute of material facts exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc., 757 F.3d 540, 543-44 (6th Cir. 2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448-49 (citing Matsushita, 475 U.S. at 587; Fed. R. Civ. P. 56(e)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store,

Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)).

### III. Americans With Disabilities Act Claim

#### a. Legal Standards

"The ADA makes it unlawful for an employer to 'discriminate against a qualified individual on the basis of disability.'" Keith v. Cnty. of Oakland, 703 F.3d 918, 925 (6th Cir. 2013) (quoting 42 U.S.C. § 12112(a)). "A person seeking relief under the ADA for termination must establish (1) that [they are] a disabled person within the meaning of the Act, (2) that [they are] qualified to perform the essential functions of [their] job with or without reasonable accommodation, and (3) that [they] suffered an adverse employment decision because of [their] disability." McKay v. Toyota Motor Mfg., U.S.A., Inc., 110 F.3d 369, 371 (6th Cir. 1997) (citing Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1179 (6th Cir. 1996)).[3] A plaintiff may make this showing "by introducing direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision . . . ." Monette, 90 F.3d at 1178 (citation omitted).[4]

"If there is direct evidence that the plaintiff suffered an adverse employment action because of his or her disability, the plaintiff then 'bears the burden of establishing that he or she is [1] "disabled"' and [2] '"otherwise qualified" for the position despite his or her disability: a) without accommodation from the employer; b) with an alleged "essential" job requirement eliminated; or c) with a proposed reasonable accommodation.'" Ferrari v. Ford Motor Co., 826

---

[3] In Lewis v. Humboldt Acquisition Corp., 681 F.3d 312 (6th Cir. 2012), the Sixth Circuit abrogated Monette to establish that the plaintiff's disability need only be a but-for cause of the adverse employment decision, rather than the sole cause. Lewis, 681 F.3d at 315-16.
[4] The alternative method of proving an ADA violation (through indirect evidence) is not at issue here because Hudson has offered direct proof and because he has not attempted to make his case using the "indirect evidence" method. See Monette, 90 F.3d 1173, 1186-87.

F.3d 885, 891 (6th Cir. 2016) (quoting Monette, 90 F.3d at 1186). "As defined in the [ADA], an individual is 'otherwise qualified' if he or she can perform the 'essential functions' of the job with or without reasonable accommodation." Keith, 703 F.3d at 925 (6th Cir. 2013). "Once the plaintiff has established these elements, the employer 'bear[s] the burden of proving that a challenged job criterion is essential[, and therefore a business necessity,] or that a proposed accommodation will impose an undue hardship upon the employer.'" Id. (quoting Monette, 90 F.3d at 1186). See also Wolfe v. U.S. Steel Corp., 567 Fed. Appx. 367, 370-71 (6th Cir. 2014) (citing Monette, 90 F.3d at 1186).

     **b. Application**

The record establishes that SCDOC relied upon Hudson's blindness in his right eye when deciding not to allow Hudson to return from Long-Term Disability to his prior position as a corrections officer. (ECF No. 60-2, ¶¶ 2-3, 9-11, 34.) Neither party disputes that fact. Accordingly, Hudson has made the initial showing required under the "direct evidence" method of proving an ADA violation. Further, Defendants do not dispute Hudson's assertion that he is "disabled" as defined by the ADA.[5] (ECF No. 60-1 at 696-98; see ECF No 61 (Defendants do not respond to the argument in their reply).) Hudson thus bears the burden of showing that he is "otherwise qualified" for the job of corrections officer: "'a) without accommodation from [SCDOC]; b) with an alleged "essential" job requirement eliminated; or c) with a proposed reasonable accommodation.'" Ferrari, 826 F.3d at 891 (quoting Monette, 90 F.3d 1186). If Hudson carries his burden, Defendants "will bear the burden of proving that a challenged job

---

[5] Moreover, the record supports the conclusion that Hudson is "disabled" as the term is defined for purposes of the ADA because he is substantially limited in the major life activity of seeing. 29 C.F.R. §§ 1630.2(g)(1)(i), 1630.2(i)(1)(i).

criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer." Monette, 90 F.3d at 1186.

### i. Qualification

The first issue is whether Hudson is qualified as a corrections officer. "The term 'qualified,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education[,] and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m).

Defendants assert two arguments opposing the conclusion that Hudson is qualified as a corrections offer: first, that Tennessee Code Annotated ("T.C.A.") § 41-4-144 prohibits Hudson from being "qualified" to be a corrections officer because he failed the physical examination required by the statute, and second, that Hudson's lack of binocular vision prohibits him from performing essential functions of a corrections officer. (ECF No. 51-1 at 201-08.) Hudson argues that he is qualified for the job based on the performance evaluations that occurred after he had lost sight in his right eye. (ECF No. 60-1 at 698-99.)[6] He also argues that § 41-4-144 does not apply to him because he was employed prior to 2006 and because §41-4-144 violates the ADA. (ECF No. 60-1 at 699-701.) Defendants reply that the statute applies, that Hudson has not established a genuine dispute of material fact as to his qualifications for the position, and that Hudson has not established a genuine dispute of material fact as to his ability to perform essential functions of the job. (ECF No. 61 at 748-54.) Defendants also argue that they

---

[6] Hudson appears to argue that he is qualified without an accommodation, as opposed to being qualified "'with an alleged "essential" job requirement eliminated; or . . . with a proposed reasonable accommodation.'" Ferrari, 826 F.3d at 891 (quoting Monette, 90 F.3d 1186).

Page 8

attempted to provide Hudson a reasonable accommodation by offering him a job as a Maintenance Utility Worker, which he declined. (ECF No. 61 at 748-55.)

### 1. Tennessee Code Annotated § 41-4-144

Regarding T.C.A. § 41-4-144, the statute requires that "any person employed as a . . . corrections officer . . . in a county jail or workhouse shall: . . . [h]ave passed a physical examination by a licensed physician." T.C.A. § 41-4-144(a)(7). As Hudson argues, however, the statute also provides that it "shall not apply to any . . . corrections officer . . . hired by any municipality, county, or political subdivision of this state prior to July 1, 2006." T.C.A. § 41-4-144(b)(3). This statute is interpreted in accordance with the plain meaning of the terms: a corrections officer who was hired before July 1, 2006, is exempt from § 41-4-144's requirements. See Koscinski v. Hamilton Cnty., No. E2014-00097-COA-R3-CV, 2014 WL 5501238 at *5 (Tenn. Ct. App. Oct. 31, 2014) ("Koscinski is exempt from the requirements of the statute as he was hired prior to July 1, 2006."). See also Lind v. Beaman Dodge, Inc., 356 S.W.3d 889, 895 (Tenn. 2011) ("When a statute is clear, we apply the plain meaning without complicating the task. Our obligation is simply to enforce the written language."). In the instant case, the record reflects that Hudson was hired on January 2, 2001. (Def.'s Resp. to Pl.'s Additional Facts in Dispute, ECF No. 61-1, ¶ 3 (not disputed by Defendants).)

The fact that Hudson was hired prior to July 1, 2006, does not end the inquiry. The exemption applies to "any jail administrator, jailer, corrections officer[,] or guard" and therefore excludes all other persons.[7] Accordingly, if Hudson was a "corrections officer" when

---

[7] For example, under the plain meaning of the statute, the exemption would not apply to a woman who was hired by a municipality as a corrections officer prior to July 1, 2006, then left work with the municipality and later sought to be re-hired as a corrections officer. The exemption would not apply because she would not, due to her departure from the municipality's employ, be a "corrections officer" at the time she was seeking to be re-hired. On the other hand,

Defendants made the decision that Hudson could not return to work, then he was exempt from the statute. Conversely, if he was not a "corrections officer" at that time, then the exemption does not apply.

Defendants argue that Hudson was considered "a new or re-hire for purposes of the statute" and that Defendant SCDOC considered Hudson to have been terminated as of June 24, 2015. (ECF No. 51-1 at 204 (citing Lewis Dep., ECF No. 58, 18:8-16; "Employee Information Control" Document, ECF No. 53.) In response, Hudson argues that he was not terminated and received no notice of termination in 2015. (ECF No. 60-1 at 699.) Defendants reply that Hudson's argument lacks evidentiary support. (ECF No. 61 at 750.)

The record reflects a genuine issue of material fact regarding Hudson's termination. Defendants accurately state facts that appear in the record: Shelby County human resources administrator Mike Lewis testified that employees who go onto long-term disability are considered terminated, and that the June 24, 2015, Employee Information Control form appears to say that Hudson was terminated on that date. (ECF No. 58, 18:8-16; "Employee Information Control" Document, ECF No. 53.) Defendants do not, however, address record evidence that conflicts with this conclusion. Most notably, the May 23, 2016, letter from Shelby County human resource manager Anthony Gunn to Hudson contains language that implies that SCDOC still considered Hudson an employee at that time. For example, the letter is "in response to [Hudson's] request for an accommodation to perform the essential functions of *your* position." (ECF No. 53-5 (emphasis added).) The letter offers an "accommodation" for Hudson and refers to the Maintenance Utility position as a "reassignment" and a "new job" for Hudson. (Id.) This language implies that SCDOC considered Hudson a current employee at the time. Consistent

---

if she was subsequently re-hired, the exemption would apply while she remained a "corrections officer" because she was hired prior to July 1, 2006.

with the understanding that Hudson was still employed by SCDOC, Mr. Lewis testified that an employee's placement on long-term disability means that they are "taken off the payroll" but did not agree that the employee was terminated at that time. (ECF No. 58 at 20:18-25 (Q. "And [Mr. Hudson] was placed on long-term duty and terminated in June 2015. Does that sound right to you? A: "He was placed on long-term disability, LTD. Which, in essence when a Shelby County employee has exhausted his sick leave and goes on long-term disability, they're taken off the payroll for that department.").) Construing the record in the light most favorable to Hudson, the record contains a genuine dispute as to the material fact of whether SCDOC considered Hudson to be a "corrections officer" at the time Defendants determined that he was ineligible pursuant to § 41-4-144.[8] Accordingly, Defendants' motion for summary judgment is DENIED as to the argument that T.C.A. § 41-4-144 precluded Hudson from being employed as a corrections officer.

### 2. Factual Evaluation of Qualifications

Turning to Defendants' argument that Hudson was otherwise not "qualified" to be a corrections officer, Defendants assert that Hudson cannot perform the job's essential functions without binocular vision. (ECF No. 51-1 at 204-08.) Hudson argues that he can perform the essential functions of the job. For support, he relies on his performance evaluations from 2011 to 2014 (after he had lost sight in his right eye) and the testimony of SCDOC employees who attempted to bring him back to work following his foot surgery. (ECF No. 60-1 at 699.) Defendants reply that the record, including Hudson's performance evaluations, contains no proof

---

[8] Further, it is not clear that SCDOC's opinion regarding Hudson's status as an employee/non-employee determines his legal status. The parties have not briefed the issue beyond this point, and, as discussed below, there is a genuine dispute as whether SCODC considered Hudson a "corrections officer" at the time of the physical. The Court need not discuss the possible underlying issue of Hudson's status as a corrections officer under the law because any inquiry would not change the outcome of this order.

that Hudson is or ever was capable of performing the essential job functions. (ECF No. 61 at 753.) They also argue that Shelby County human resources officer Anthony Gunn has no basis on which to opine that Hudson is capable of performing the job's essential functions. (Id. at 754.)

Defendants' motion for summary judgment on this issue fails for two reasons. First, they have failed to show that they are entitled to judgment as a matter of law regarding Hudson's qualifications for the position because their conclusion that Hudson is not qualified for the job rests only on a generalization regarding his right-eye blindness. "The ADA mandates an individualized inquiry in determining whether an employee's disability or other condition disqualifies him from a particular position. In order to properly evaluate a job applicant on the basis of his personal characteristics, the employer must conduct an individualized inquiry into the individual's actual medical condition, and the impact, if any, the condition might have on that individual's ability to perform the job in question." Holiday v. City of Chattanooga, 206 F.3d 637, 643 (6th Cir. 2000) (collecting cases). See also Keith v. Cnty. of Oakland, 703 F.3d 918, 923 (6th Cir. 2013) (quoting Holiday, 206 F.3d at 643). In the instant case, however, the record contains no proof that Defendants conducted an individualized inquiry into the impact, if any, that right-eye blindness might have on Hudson's ability to perform the job of corrections officer. To the contrary, Shelby County human resources administrator Michael Lewis testified that Hudson was not allowed to return to work "[b]ecause his blindness was a disqualifier with our medical standards" for corrections officers.[9] (Lewis Dep., ECF No. 58, 34:21-24.) The record reflects that Defendants did not inquire into Hudson's ability to perform the job's essential functions beyond the medical examination. Defendants' decision thus appears to have been

---

[9] For the reasons discussed above, see III.b.i.1, supra, there is a dispute of fact as to whether Hudson is exempt from the standards set out in Tenn. Code Ann. § 41-4-144.

based solely on the medical observation of Hudson's blindness, rather than on an individualized inquiry into Hudson's ability to perform the job's essential functions. "The ADA requires employers to act, not based on stereotypes and generalizations about a disability, but based on the actual disability and the effect that disability has on the particular individual's ability to perform the job." Keith, 703 F.3d at 924 (citing Holiday, 206 F.3d at 643). Accordingly, Defendants have failed to show that their determination was based on an individualized inquiry, and they have not shown that they are entitled to judgment as a matter of law.

Defendants' motion for summary judgment as to qualification also fails because the record reflects a genuine issue of material fact as to whether Hudson can perform the essential functions of the corrections officer job. The parties do not dispute which of the jobs' functions are "essential," but instead disagree about whether Hudson's right-eye blindness prevents him from performing those functions. Assuming, based on Defendants' assertion and Hudson's failure to object to it, that the essential functions of the corrections officer job are those listed in the job description (ECF No. 51-3), there remains a genuine issue as to whether Hudson is qualified to perform those functions notwithstanding his right-eye blindness.

As defined in the [ADA], an individual is 'otherwise qualified' if he or she can perform the 'essential functions' of the job with or without reasonable accommodation." Keith, 703 F.3d at 925. In the instant case, the record contains conflicting evidence regarding the degree to which Hudson's right-eye blindness affects his ability to perform the job's essential functions. A corrections officer's essential functions include observing inmate conduct, supervising inmates, patrolling inmate quarters, performing counts, inspecting for contraband, and controlling, restraining, and maintaining control over inmates. (Corrections Officer Job Description, ECF No. 51-3; Alexander Dep., ECF No. 54 at 297-99.) As SCDOC Administrator Alexander

testified, a loss of vision in only one eye would affect someone's ability to perform those duties. (ECF No. 54, 20:15-23:4. ("[T]here would be some difficulties in possibly quite a few of these [essential functions] with limited sight. . . . [P]eripheral vision would be compromised to a certain degree.").) The relevant inquiry is not, however, whether right-eye blindness would affect Hudson's ability to perform the essential functions of the corrections officer job, but whether Hudson "can perform" the job. In the instant case, the record contains evidence that, despite his right-eye blindness, he can. In the time between Hudson's loss of right-eye vision in 2010 and his leave from work in 2014 for foot surgery, he was evaluated by SCDOC at least five times. (ECF No. 61-1, ¶¶ 7-12 (no dispute as to these facts).) Each time, SCDOC found that he achieved or exceeded the job's performance metrics, which evaluated his ability to perform the job's essential functions. (See ECF No. 60-6.) SCDOC has not provided any evidence that Hudson failed to perform his job duties during that time or that his condition has changed since. Accordingly, the record contains evidence that Hudson not only *could* perform the essential functions of a corrections officer, it contains evidence that he *has* performed those functions. This is evidence that he is "otherwise qualified" under the ADA.

Defendants' arguments in opposition do not compel a different outcome. They argue first that Hudson's personal opinion regarding his qualifications is not, itself, evidence. (EF No. 51-1 at 206-07.) Although they are correct, the record contains other evidence to support Hudson's position. Second, Defendants argue that Hudson "cannot submit sufficient proof to show that he is capable of performing the essential functions of a Corrections Officer." (Id. at 207.) This argument is based on generalizations and not on an individual assessment; moreover, it fails to reckon with the proof that SCDOC actually did consider Hudson capable of performing the job's functions, as reflected in his performance assessments. Third, Defendants argue that Hudson

cannot rely on his past performance to establish current capabilities. (ECF No. 51-1 at 208; ECF No. 61 at 753.) The authority that Defendants quote in support, Wheeler v. Jackson Nat'l Life Ins. Co., 159 F. Supp. 3d 828, 852 (M.D. Tenn. 2016), only prevents a plaintiff from relying on an evaluation that occurred before they suffered deteriorated or diminished abilities. In the instant case, however, the record reflects that Hudson's evaluations occurred while he was right-eye blind. (Hudson Dep., ECF No. 57, 24:5-26:5.) Nothing in the record indicates that Hudson's condition has changed since those evaluations, so Defendants' argument fails. Defendants also argue that Hudson's prior evaluations are "not proof that he is presently (or ever was) capable of performing the essential job functions." This argument fails to address the portions of Hudson's evaluations where he was found to accomplish or exceed expectations regarding the job's essential functions. Fourth, Defendants argue that Hudson's prior lack of accidents or injuries due to his disability does not establish that he is capable of performing the job. (ECF No. 51-1 at 208.) This argument, like their first and second arguments, fails to address the proof that appears in the record. Accordingly, Defendants' motion for summary judgment is DENIED as to Hudson being qualified as a corrections officer.

### ii. Direct Threat

Defendants argue that even if Hudson is otherwise "qualified" for the job of corrections officer, his right-eye blindness would pose a direct threat to himself or others[10] (ECF No. 51-1

---

[10] Defendants assert this defense as a "business necessity." It is not clear, however, that the "business necessity" defense under the ADA is relevant to Hudson's qualifications as a corrections officer. The authorities that Defendants rely upon all indicate that "business necessity" is a defense to an employer requiring an employee to undergo medical evaluation. See, e.g., Kroll v. White Lake Ambulance Authority, 763 F.3d 619, 623 (6th Cir. 2014). Therefore, the "business necessity" of the medical examination is only a defense in the instant case inasmuch as Hudson alleges that the medical examination violated his ADA rights. Neither party has addressed that issue on summary judgment. As far as Hudson's qualifications for the

Page 15

at 208-10.[11]) Hudson argues that Defendants cannot establish the affirmative defense of "direct threat" because they did not perform an individualized assessment of the risks that he poses. (ECF No. 60-1 at 701-704.)

"The ADA provides that a disabled individual is not 'qualified' for a specific employment position if he poses a 'direct threat' to the health or safety of others that cannot be eliminated by a reasonable accommodation." Holiday, 482 F.3d at 648 n.4. "With regard to the employer's evaluation of an employee's direct-threat risk, 'the employer must conduct an individualized inquiry into the individual's actual medical condition, and the impact, if any, the condition might have on that individual's ability to perform the job in question.'" Wurzel v. Whirlpool Corp., 482 Fed. Appx. 1, 12 (6th Cir. 2012) (quoting Holiday, 206 F.3d at 643). "Courts are to assess the objective reasonableness of the views of the employer and/or employer's medical professionals who made the direct threat-decision." Id. (citing Bragdon v. Abbott, 524 U.S. 624, 650 (1998)).

In the instant case, the Court cannot assess the objective reasonableness that underlies Defendants' direct threat determination because, as far as the record shows, Defendants never made that determination. The record reflects that Hudson failed the physical examination because of his right-eye blindness, and that Defendants considered his blindness "a disqualifier with [their] medical standards for that position." (Lewis Dep., ECF No. 58 at 34:1-24.) Defendants do not assert that they ever determined Hudson to be a direct threat to himself or to

---

job are concerned, the Court has evaluated the merits of Defendants' "direct threat" argument above.

[11] In support of their argument, Defendants cite 42 U.S.C. § 12112(d)(4)(A). That section only applies to employees. Other sections address medical examinations of candidates for employment. 42 U.S.C. §§ 12112(d)(2)-(3). Defendants' reliance on the "business necessity" of the examination is therefore at odds with their assertions that Hudson was not, at the time of the examination, an employee.

others, or that they conducted an individualized inquiry into Hudson's "actual medical condition, and the impact, if any, the condition might have on [Hudson's] ability to perform" as a corrections officer. Wurzel, 482 Fed. Appx. at 12. Moreover, nothing in the record indicates that they did. What the record shows is that Defendants' decision was based solely on Hudson's diagnosis as being right-eye blind and the SCODC medical standards. (Lewis Dep., ECF No. 58 at 34:21-24.) Accordingly, Defendants have not shown that their assertion that Hudson presents a direct threat entitles Defendants to judgment as a matter of law. Their motion for summary judgment is DENIED as to this issue.

Based on the foregoing, Defendants' motion for summary judgment is DENIED as to Hudson's ADA claim.

**IV.** **Due Process Clause Claim**

In addition to the ADA claim discussed above, Hudson's complaint also asserts claims under 42 U.S.C. § 1983 against all defendants for violating the Procedural Due Process Clause of the Fourteenth Amendment to the United States Constitution. (ECF No. 28, ¶ 43.) Hudson's response to the instant motion "consents to the dismissal of his Due Process and Equal Protection claims." (ECF No. 60-1 at 691.) Defendants' motion for summary judgment is therefore unopposed with respect to Hudson's Due Process Clause claim. Defendants' motion is GRANTED as to that claim.[12]

---

[12] Based on this order and the order granting motion for partial judgment on the pleadings (ECF No. 42), no claims remain against Defendants William J. Gupton, Jr. and Anthony Gunn in their individual capacities. Accordingly, those defendants remain parties to this suit only in their official capacities.

## V. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is DENIED as to Hudson's ADA claim, and GRANTED as to Hudson's Due Process Clause claim.

**SO ORDERED**, this 21st day of May, 2018.

                                          /s/ Jon P. McCalla
                                          JON P. McCALLA
                                          UNITED STATES DISTRICT JUDGE